Ferdinand Bohmer, Jr., Appellant, *v.* Louis F. Haffen, Commissioner of Street Improvements of the Twenty-third and Twenty-fourth Wards of the City of New York, and The Mayor, Aldermen and Commonalty of the City of New York, Defendants; The Union Railway Company of New York City, Respondent.

*Constitutionality of chapter* 361 *of* 1863 — *chapter* 340 *of* 1892 *does not contain more than one subject and sufficiently expresses its object in the title — it does not grant an exclusive immunity or privilege — the consent of the commissioner of street improvements in New York city not necessary to the construction of a street surface railroad — meaning of the word " extend" as used in the Railroad Law.*

Assuming that section 9 of chapter 361 of the Laws of 1863, authorizing the construction of a railway and tracks in the towns of West Farms and Morrisania, is unconstitutional, as in violation of the prohibition contained in section 16 of article 3 of the Constitution of the State of New York (as it existed prior to 1875), the first eight sections of the act being complete in themselves and the 9th simply conferring additional powers and not having any relevancy to the subject-matter of the previous eight sections, the statute may be read as if the 9th section were not contained therein, and thus be given effect so far as it is constitutional.

Chapter 340 of the Laws of 1892, amending chapter 361 of the Laws of 1863, is not unconstitutional as containing more than one subject and as not expressing its object in its title, as if the right thereby given, to consolidate with other corporations, thereby forming a new corporation, had been incorporated into the act of 1863, it would have been a privilege and a right germane to the subject-matter of the latter act and incidental to the powers of the corporation organized to construct railways in the district affected by the consolidation.

The exemption of the consolidated company from the provisions of sections 93, 95 and 98 of the General Railroad Law did not confer upon it any exclusive immunity or privilege, but simply operated to relieve the corporation from conditions which had been imposed by the Legislature.

The department of public parks of the city of New York did not have that exclusive control of the streets, contemplated by sections 91 and 92 of the Railroad Law (Laws of 1890, chap. 565), which made the consent of the commissioner of street improvements in the twenty-third and twenty-fourth wards of that city (in whom, by chapter 545 of the Laws of 1890, there was vested the same authority in respect to the streets, etc., which, prior to the passage of that act, was vested in and exercised by the department of public parks) necessary to the construction of a railroad in such streets.

The word "extend," as used in chapter 676 of the Laws of 1892, in relation to extensions by street surface railroad corporations, was not intended to be used in its restricted sense of prolongation in a given direction, but was intended to

enable such railroad companies to acquire a right of construction, maintenance and operation of additional routes which might be operated in connection with their existing lines.

APPEAL by the plaintiff, Ferdinand Bohmer, Jr., from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 15th day of March, 1898, upon the decision of the court rendered after a trial at the New York Special Term dismissing his complaint.

The action was a taxpayer's action to have adjudged null and void certain resolutions of the common council of the city of New York purporting to grant to the defendant railway company the right to construct and operate its railroad upon certain streets in the city of New York, to restrain the defendant Louis F. Haffen, as commissioner of street improvements of the twenty-third and twenty-fourth wards of the city of New York, and the defendant the city of New York, from granting permits to the defendant railway company to lay its tracks in such streets, and to set aside permits previously granted.

*Clarence L. Barber*, for the appellant.

*Charles A. Collin*, for the respondent, the Union Railway Company of New York city.

VAN BRUNT, P. J.:

On the 2d of May, 1863, the Legislature passed an act, entitled "An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania," being chapter 361 of the Laws of 1863. By the first eight sections of said act was granted to the persons named therein and their associates the right to lay railroad tracks upon certain streets and avenues in the towns of West Farms and Morrisania. By the 9th section thereof it was provided that the corporation formed under the act might lay railway tracks to the villages of West Farms, Westchester and Mt. Vernon, in the towns of West and East Chester. On the 16th of May, 1863, articles of association of the Harlem Bridge, Morrisania and Fordham Railway Company, signed by all the persons named in said act except five, and by five others, were filed in the office of the Secretary of State; the corporation thereby formed was to construct and operate a railroad upon the routes mentioned in the 8th section of said act. By the 12th paragraph of the articles of asso-

ciation it was provided that the corporation did not avail itself of the privileges of the 9th section of the act of 1863, but that such privileges and franchises conferred by said 9th section were expressly reserved to the grantees in the said act and their associates as the basis of a separate corporate organization.

On the 1st of July, 1863, an amendment to article 12 of the articles of association of the Harlem Bridge, Morrisania and Fordham Railway Company was filed in the office of the Secretary of State, by which, as grantees and incorporators under said act and articles of association, and as assigns of certain of the grantees, said association accepted the provisions included in the 9th section of said act above referred to.

This corporation built, equipped and commenced to operate the railroad mentioned in the first eight sections of the act within a short period after its incorporation.

Prior to the 1st of January, 1875, various amendments to the act above referred to were passed. Upon that date amendments to the Constitution went into effect placing further limitations (in addition to those previously existing) upon the Legislature, and prohibiting the passage of a private or local bill granting to any corporation, association or individual the right to lay down railroad tracks, or the granting to any private corporation, association or individual any exclusive immunity, privilege or franchise whatsoever.* During said year chapter 361 of the Laws of 1863 was further amended.† On the 19th of August, 1886, the Melrose and West Morrisania Railroad Company filed articles of association in the office of the Secretary of State, but never constructed any portion of its road. On the 27th of January, 1890, the North Third Avenue and Fleetwood Park Railroad Company also filed articles of association in the office of the Secretary of State, but never constructed any portion of its road. By chapter 340 of the Laws of 1892 said act of 1863 was further amended and power was given to the corporation formed under that act to consolidate its capital stock and property with the capital stock and property of any street railroad company incorporated for the purpose of building and operating any street surface railroad operated or to be operated north and east of the Harlem river in the city of New

---

* Art. 3, § 18.— [REP.        † Laws of 1875, chap. 295.— [REP.

York or the county of Westchester. The act contained certain provisions regulating the agreement of consolidation or the indenture of purchase or lease; and also exempted the corporation from the provisions of sections 93, 95 and 98 of chapter 565 of the Laws of 1890 (said sections being those of the General Railroad Act relating to the sale of franchises of street surface roads, payment of percentage of gross receipts and the repair of streets), and provided that the company should keep in permanent repair that portion of the street between its tracks after the same should have been paved and macadamized, and pay certain percentages upon its receipts.

Pursuant to the power conferred by this act, on July 2, 1892, a consolidation agreement was entered into between the said Harlem Bridge, Morrisania and Fordham Railway Company, the said Melrose and West Morrisania Railroad Company and the said North Third Avenue and Fleetwood Park Railroad Company, forming the defendant the Union Railway Company of New York, which consolidation agreement was duly filed as required by said act of 1892 in the office of the Secretary of State on July 5, 1892. On the same day a petition to the common council was signed on behalf of the Union Railway Company, asking for leave to construct certain extensions of its railroad. On the 7th of July, 1892, a statement of the proposed extensions was filed in the office of the Secretary of State, and on the twelfth of July the said petition was presented to the board of aldermen, and such proceedings were subsequently had that, on the 23d of August, 1892, a resolution granting the extension was passed by the board of aldermen and approved by the mayor on the twenty-sixth of August, and on the thirty-first accepted by the corporation. On the 6th of December, 1892, a second petition for extensions was presented to the board of aldermen, and such proceedings were thereupon had that a resolution granting the extensions was adopted on the twenty-seventh of December, approved by the mayor on the 28th of December, 1892, and accepted by the corporation on the 20th of February, 1893. A statement of said proposed extensions was filed in the office of the Secretary of State on the 29th of December, 1892.

A considerable mileage of railroad has been constructed, and is now operated by said Union Railway Company. The right of this company to operate such railways is attacked in this action, princi-

pally upon the ground that the acts of 1863 and 1892 are unconstitutional, and that the consents of the proper local authorities have not been obtained. The act of 1863 is claimed to be unconstitutional, in that it contravenes section 16 of article 3 of the Constitution as it existed prior to 1875. That section provides as follows: " No private or local bill which may be passed by the Legislature shall embrace more than one subject, and that shall be expressed in the title."

The act of 1892 is claimed to be unconstitutional, because it not only contravenes those provisions of the Constitution, but also the prohibition contained in section 18 of article 3 of the Constitution as amended in 1875, by which, amongst other things, the Legislature is prohibited from passing a private or local bill granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever, or the right to lay down railroad tracks. It is also claimed that the proper consent of the local authorities was not obtained in respect to many of the extensions built, in that the consent of the commissioner of street improvements in the twenty-third and twenty-fourth wards of the city of New York, in whom it is claimed was vested the exclusive control of the streets and avenues affected by said extension, was not obtained, and also that the Harlem Bridge, Morrisania and Fordham Railway Company had forfeited its charter in not building, within the time required by law, the roads mentioned in the 9th section of the act of 1863.

It may be that section 9 of chapter 361 of the Laws of 1863 is repugnant to the prohibition contained in section 16 of article 3 of the Constitution. But this in no way affects the validity of the remainder of the act, provided it is not so interwoven with such remainder as to be incapable of separation without affecting the whole scheme of the act.

It is apparent upon an examination of chapter 361 of the Laws of 1863 that the first eight sections of the act are complete within themselves, and that the 9th section was tacked on for the purpose of giving additional powers only, and none of its provisions had any relevancy to the subject-matter of the previous eight sections. Under these circumstances, it is possible to read the statute as if that provision was not there, thus disregarding the unconstitutional part

of the statute and giving force and effect to that which is constitutional and is perfect and complete in itself. This is a familiar rule of constitutional law. Hence the fact that the 9th section may be unconstitutional in no way affects the corporate life of the Harlem Bridge, Morrisania and Fordham Railway Company. This consideration disposes of the objection that such corporate existence was terminated because the company had not completed, within the time required by law, the roads mentioned in the 9th section of the act of 1863. If the authority to construct was not acquired, by reason of the unconstitutionality of the 9th section, it is difficult to see how the failure to exercise a right which did not exist could extinguish corporate life.

The next question is as to the constitutionality of chapter 340 of the Laws of 1892, which purported to amend chapter 361 of the Laws of 1863. Numerous objections have been raised to the constitutionality of this act, which may be summed up in two propositions : (1) That the act contains more than one subject and (2) that it grants exclusive immunities or privileges.

The validity of the amendments to the act of 1863 passed in 1892 depends upon the question as to whether they could have been originally incorporated in the statute, having in view, however, the additional constitutional prohibition which came into effect in 1875. Additional powers may undoubtedly be conferred by amendment. To constitute an amendment to a statute it is not necessary that it should actually incorporate something into the sections of the statute then existing. An amendment may be an addition to as well as an enlargement of the sections of the statute existing at the time of such amendment. The act of 1892 is not void because it contains more than one subject and its objects are not expressed in the title, as, if a right to consolidate with other corporations, thereby forming a new corporation, had been part of the act of 1863, it would have been a privilege and a right germane to the subject-matter of the act. This legislation was merely the granting of a right of combination without conferring any additional privileges except those which were enjoyed by the corporations combined. Such right of combination was clearly incident to the powers of a corporation authorized to construct railways in the regions which might be affected by the consolidation.

The exemption of the consolidated company from the provisions of sections 93, 95 and 98 of the General Railroad Law was not the conferring of any exclusive immunity or privilege. Those were conditions which had been imposed by the Legislature, which were entirely its creation, and from which it had the power to give exemptions — in other words, to repeal the same *pro tanto*. It was not the conferring of any immunity or privilege, but was simply relieving the new corporations from conditions, and the substitution of a different method of contribution.

The objection that the consent of the proper local authorities was not obtained seems to be equally without foundation. This objection was based upon the peculiar legislation attending the creation of the office of commissioner of street improvements in the twenty-third and twenty-fourth wards of the city of New York. It is claimed that by virtue of this legislation there was conferred upon the said commissioner the exclusive control of the streets and avenues within those wards; and that, consequently, under the provisions of sections 91 and 92 of the Railroad Law his consent was necessary before the right to construct the routes mentioned in the various extensions could be obtained, and that the consent of the common council was not sufficient. By chapter 545 of the Laws of 1890 there was vested in the commissioner of street improvements in the twenty-third and twenty-fourth wards the same authority in respect to the streets, roads, avenues, public squares and places in said wards which prior to the passage of the act were vested in and exercised by the department of public parks in the city of New York. The department of public parks had been given the exclusive power to locate and lay out, construct and maintain all public parks, streets, roads and avenues, and the exclusive right to construct and maintain all bridges, tunnels, sewers, streets, roads and avenues so located and laid out; and said department had exclusive power to establish the widths and grades of all such streets, roads and avenues so located and laid out and with authority to change the location, width, grades, etc., of said streets, avenues and roads.

It is to be observed that while the department of public parks under this legislation had exclusive power to locate, lay out, construct and maintain the streets, roads and avenues, they are not given the exclusive control of the same. There were important

governmental duties which were left to be performed by the city of New York in respect to police regulations, the cleaning and keeping clean of those streets and the proper lighting thereof. For these purposes the city had control of the streets and avenues situated within the twenty-third and twenty-fourth wards, so far as was necessary to effect those objects. The department of public parks, therefore, did not have that exclusive control contemplated by the sections of the Railroad Law above referred to, and the consent of the commissioner of street improvements was consequently not necessary.

It has been further argued that certain of the routes named in the proposed extensions were not in reality extensions of the railroad, but that some of them were in the nature of branches, running in parallel lines or substantially so. In considering the provisions of chapter 676 of the Laws of 1892, in relation to extensions by street surface railroad corporations, it would seem that the word " extend " was not intended to be used in its restricted sense of prolongation in a given direction, but rather that it was intended to enable the railroad company to acquire a right of construction, maintenance and operation of additional routes which might be operated in connection with its existing lines. The language of the latter part of section 90 of the act in question is as follows    A street surface railroad corporation may file in each of the offices in which its certificates of incorporation are filed, a statement of the names and descriptions of the streets, roads and highways in which it is proposed to extend its road. Upon filing such statement such corporation shall, except as otherwise prescribed by law, have the same power and privileges, to extend, construct, operate and maintain its road in such streets, roads and highways as it acquired by its incorporation to construct, operate and maintain its road in the streets, roads and highways named in its certificate of incorporation." If this provision stood alone it might perhaps require the restricted construction claimed by the appellant, but when we consider the 1st paragraph of the section, which immediately precedes the one quoted, it is apparent that it was intended to give to the word " extend " its largest and most comprehensive meaning. That paragraph is as follows : " A corporation organized since May 6, 1884, for the purpose of building and operating or extending a street

surface railroad or any of its branches, for public use in the convey-ance of persons and property in cars for compensation, upon and along any street, avenue, road or highway, in any city, town or village, or in any two or more civil divisions of the State, must com-ply with the provisions of this article." Here is defined what the legislators meant by extension. They speak of the extension of a street surface railroad or any of its branches upon or along any street, avenue, road or highway in any city, town or village, not restricting it to a mere prolongation of existing branches, but evidently con-templating an extension of its operations in any direction or upon any street or avenue. It seems to have been intended to grant the most general power, only restricted by the provisions of the act itself, and, therefore, we must conclude that the right to construct additional lines in any direction to be operated in connection with existing lines may be obtained by compliance with the requirements of the act.

Various other objections have been presented upon the points of counsel, but they do not seem to be of sufficient gravity to require special notice.

The judgment should be affirmed, with costs.

Barrett, Rumsey, Patterson and O'Brien, JJ., concurred.

Judgment affirmed, with costs.