In the Matter of the Application of the Brooklyn, Queens County and Suburban Railroad Company, Appellant, for a Writ of Mandamus against Martin W. Littleton, as President of the Borough of Brooklyn, et al., Respondents.

1. Street Surface Railroads — Forfeitures — Section 5 of Railroad Law (L. 1890, Ch. 565) Applies Thereto — Section 99 Not Exclusive and Does Not Exempt Street Railroads from Provisions of Section 5.   The self-executing forfeiture provisions of section 5 of the Railroad Law (L. 1890, ch. 565, as amended) that "If any domestic railroad corporation shall not, within five years after its certificate of incorporation is filed, begin the construction of its road and expend thereon ten per cent of the amount of its capital, or shall not finish its road and put it in operation in ten years from the time of filing such certificate, its corporate existence and powers shall cease," although found in article 1 of the Railroad Law, which relates to steam railroads, are applicable to street surface railroads; since section 99 of said law, applicable solely to street surface railroads, which also relates to forfeitures and provides that "In case any such (street surface railroad) corporation shall not commence the construction of its road, or of any extension or branch thereof, within one year after the consent of the local authorities and property owners or the determination of the General Term as herein required, shall have been given or renewed, and shall not complete the same within three years after such consents, its rights, privileges and franchises in respect to such railroad extension or branch, as the case may be, may be forfeited;" is not exclusive and does not, therefore, exempt street surface railroads from the provisions of section 5.

2. Extension of Street Surface Railroads — Certificate Thereof, an Amendment of Articles of Incorporation — Extension Must Be Commenced or Constructed as Required by Section 5 of Railroad Law.   A certificate of extension filed by a street surface railroad company is in effect an amendment of its original articles of incorporation, prescribing the line and route of an addition to the route described in its certificate of incorporation, and to that extent amends the original articles of incorporation; the period within which such corporation must act as to such extension commences to run from the date of the filing of the certificate of extension, and a failure to comply with the requirements of section 5 of the Railroad Law within the time therein fixed results in a forfeiture of the franchise to build the extension.

3. Chapter 494 of Laws of 1901, Amending Section 93 of Railroad Law, and Chapter 508 of Laws of 1901, Amending Section 5, Have No Application to Street Surface Railroads Which Have Forfeited Franchises Before the Enactment of Such Laws.   The

provisions of the statutes, Laws of 1901, chapter 494, amending section 93 of the Railroad Law and providing that "Every consent by the local authorities of any city of the first class or of any city, town or village now embraced within the corporate limits of any city of the first class heretofore given to or acquired or owned by any street surface railroad corporation, since January first, eighteen hundred and ninety, is hereby ratified and confirmed, and shall be deemed to be in full force and effect, and shall continue until and including December thirty-first, nineteen hundred and three, when it may be forfeited," etc., and Laws of 1901, chapter 508, amending section 5 of the Railroad Law and providing that "This section (5) shall not apply to any street surface railroad incorporated prior to July 1, 1895, which has obtained or become the owner of the consents of the local authorities of any city of the first or second class," have no application to a street surface railroad which had absolutely forfeited and lost its franchise to construct an extension to its route, before the enactment of such statutes, for its failure to comply with the requirements of section 5 of the Railroad Law.

4. MANDAMUS — STREET SURFACE RAILROAD, WHICH HAS FAILED TO COMPLY WITH SECTION 5 OF RAILROAD LAW, IS NOT ENTITLED TO A MANDAMUS COMPELLING CITY AUTHORITIES TO GRANT PERMIT TO CONSTRUCT EXTENSION.   Where a street surface railroad company, owning and operating a street surface railroad on Broadway and other streets in the city of Brooklyn, caused to be filed and recorded, on May 28, 1893, a certificate of extension of its road between certain limits upon Saratoga avenue in said city, and on July 24, 1893, the common council of said city granted its consent to said railroad company to construct, maintain and operate such proposed extension, which right, privilege and franchise were afterwards transferred to another company, which company, sometime between January 16, 1894, and September, 1903, obtained the requisite consents of property owners for the construction of said extension, but, until the time that it applied to the authorities of the borough of Brooklyn, on or about June 12, 1904, for a permit to construct a double track street surface railroad upon the route designated in the certificate of extension, such company had never taken any steps to commence or complete the construction of such extension, the company is not entitled, upon the refusal by said authorities to grant the permit asked for, to a writ of mandamus to compel them to permit the company to construct a double-track extension of its street surface railroad in Saratoga avenue.

*Matter of Brooklyn, Q. C. & S. R. R. Co.*, 106 App. Div. 240, affirmed.

(Argued April 2, 1906 ; decided May 8, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 14, 1905, which affirmed an order of Special Term deny-

ing a motion for a peremptory writ of mandamus to compel the defendants to grant to the petitioner a permit to open the pavement on Saratoga avenue in the city of Brooklyn for the purpose of constructing thereon a double-track street surface railroad.

The facts, so far as material, are stated in the opinion.

*Alton B. Parker, Charles A. Collin, Edward W. Hatch, William F. Sheehan* and *George D. Yeomans* for appellant. The franchise to construct this railroad in Saratoga avenue has not been destroyed by lapse of time. (*Kittenger* v. *B. T. Co.*, 160 N. Y. 377; *Brownell* v. *Town of Greenwich*, 114 N. Y. 518; *Rogers* v. *Stephens*, 86 N. Y. 623; *Tifft* v. *City of Buffalo*, 82 N. Y. 204; *People ex rel. Kilmer* v. *McDonald*, 69 N. Y. 362; *Town of Duanesburgh* v. *Jenkins*, 57 N. Y. 177; *People* v. *Mitchell*, 35 N. Y. 551.) Section 5 of the Railroad Law does not apply to the relator, or any other street surface railroad corporation, organized since the enactment of chapter 252 of the Laws of 1884, but section 99 of that act does. The amendment of 1901 was a cautionary measure, and was not intended to, and did not, broaden the scope of section 5. (*N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1; *Matter of N. Y. D. R. Co.*, 107 N. Y. 54; *People ex rel. T. A. R. R. Co.* v. *Newton*, 112 N. Y. 396; *Matter of W. S. A., etc., R. R. Co.*, 115 N. Y. 442.) Even if the court should decide that the first sentence of section 5 of the Railroad Law was intended to apply to street surface railroads, it must nevertheless hold that the forfeiture has been waived, and this petitioner's rights and franchises have been revived and continued by subsequent general legislation. (*County Comrs.* v. *Lewis*, 133 U. S. 198.)

*Frank S. Black* and *Henderson Peck* for bondholders. The first clause of section 5 of the Railroad Law has no application to a street surface railroad in the city of New York. (*N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1; *Matter of N. Y. D. Ry. Co.*, 107 N. Y. 42; *People ex rel. T. A.*

*R. R. Co.* v. *Newton,* 112 N. Y. 396; *Matter of W. S. &
P. Ry. Co.,* 115 N. Y. 442.) Section 5 does not apply to
any street surface railroad company incorporated prior to
1895.. (*Bailey* v. *Hollister,* 26 N. Y. 112; *P. R. Co.* v.
*Griffin,* 24 N. Y. 150.)

*John J. Delany, Corporation Counsel* (*James D. Bell* of
counsel), for respondent. The corporate franchises of the
defendant had ceased and determined so far as construct-
ing and operating a railroad on Saratoga avenue was con-
cerned at the time the application for a permit was made,
and the court, therefore, properly denied petitioner's appli-
cation for a mandamus. (*B. & R. B. R. R. Co.* v. *L.
I. R. R. Co.,* 72 App. Div. 496; *Matter of B. W. & N. Ry.
Co.,* 72 N. Y. 245; 75 N. Y. 335; *B. S. T. Co.* v. *City of
Brooklyn,* 78 N. Y. 524; *Gilman* v. *Tucker,* 128 N. Y. 190.)
Section 5 of the Railroad Law applies to street railroad cor-
porations. (L. 1850, ch. 140, § 47; L. 1867, ch. 906; L. 1890
ch. 565.) The claim that section 99 of the Railroad Law
controls section 5 or repeals it *pro tanto,* so far as street
surface railroads are concerned, is not admissible. (L. 1890,
ch. 565.)

HISCOCK, J. The railroad company, petitioner and appel-
lant, sought by mandamus to compel the proper authorities of
the borough of Brooklyn to permit it to construct a double-
track extension of its street surface railroad upon Saratoga
avenue in said borough. The learned Appellate Division has
affirmed the order of the Special Term denying this applica-
tion, upon the ground that the petitioner through inaction had
forfeited its franchise and right to construct said extension.
This determination involved the decision that the self-execut-
ing forfeiture provisions of section 5 of chapter 565 of the
Laws of 1890, known as the Railroad Law, apply to street
surface railroads, and, conversely, that section 99 of said law,
applicable solely to said railroads, and which also relates to
forfeitures, but is not self-executing, is not exclusive and does
not exempt them from the provisions of the other section.

We agree with the conclusions adopted by the courts below upon this point, and are thereby led to an affirmance of the order appealed from.

The facts presenting the questions involved upon this appeal are simple and not the subject of controversy.

The Broadway Railroad Company for many years prior to 1893 had been a street surface railroad corporation owning and operating a double-track street surface railroad on Broadway and other streets in the city of Brooklyn. On May 28, 1893, it caused to be filed and recorded a certificate of extension of its road between certain limits upon Saratoga avenue in said city. On July 24, 1893, the common council of said city granted its consent to said railroad company to construct, maintain and operate said proposed extension. In November, 1893, the Brooklyn, Queens County and Suburban Railroad Company, the petitioner herein, was duly incorporated as a street surface railroad corporation, and upon January 16, 1894, being then the lessee of the rights, property and franchises of the Broadway Railroad Company, took a surrender and transfer of all the capital stock of said latter company which thereby became merged into and with the Brooklyn, Queens County and Suburban Railroad Company, which in turn thereby became the owner of, amongst other property, the right, privilege and franchise above referred to, to construct and operate the extension in Saratoga avenue. Some time between January 16, 1894, and September 30, 1903, the petitioner obtained the requisite consents of property owners for the construction of said extension, but down to the time of the institution of this proceeding at said latter date it had never taken any steps to commence or complete the construction of the same.

Section 5 of the Railroad Law above referred to at the time its franchise was granted to petitioner and for several years thereafter, so far as applicable, provided : "If any domestic railroad corporation shall not, within five years after its certificate of incorporation is filed, begin the construction of its road and expend thereon ten per centum of the amount of its

capital, or shall not finish its road and put it in operation in ten years from the time of filing such certificate, its corporate existence and powers shall cease." This section is found in article 1 of the Railroad Law, which concededly is applicable to steam railroads.

Section 99 of said law, so far as applicable at the times in question, provided : " In case any such (street surface railroad) corporation shall not commence the construction of its road, or of any extension or branch thereof within one year after the consent of the local authorities and property owners, or the determination of the General Term as herein required, shall have been given or renewed, and shall not complete the same within three years after such consents, its rights, privileges and franchises in respect to such railroad extension or branch, as the case may be, may be forfeited."

This provision is found in article IV of said Railroad Law which relates solely to street surface railroads. From this fact and for various reasons claimed to be deducible therefrom or in connection therewith, the learned counsel for the appellant argues that it repeals or at least excludes the operation of section 5 heretofore quoted, upon street surface railroads.

The importance of this contention so far as this proceeding is concerned is that the provisions of section 5 are concededly self-executing and, if applicable, have forfeited petitioner's rights to its franchise for the extension in question, while the provisions of section 99 are only the basis for forfeiture proceedings which have never been taken.

Some decisions have been made by this court which at the outset help to guide us to the adverse answer which we have determined to make to the appellant's contention.

In 1850 the general act to authorize the formation of railroad corporations was adopted, being chapter 140 of the laws of that year. Chapter 775 of the Laws of 1867 amended said act of 1850, by providing that if any corporation formed under the latter " shall not, within five years after its articles of association are filed and recorded in the office of the secretary of state, begin the construction of its road, and expend

thereon ten per cent. on the amount of its capital, or shall not finish its road and put it in operation in ten years from the time of filing its articles of association, as aforesaid, its corporate existence and powers shall cease."

In *Matter of Brooklyn, W. & N. Ry. Co.* (72 N. Y. 245) this court held that street surface railroad companies might be incorporated under the general act of 1850, and that the amendment of 1867 just quoted was applicable to them. This decision was made in 1878. The amendment of 1867 is practically the same provision now found in and quoted from section 5 of the Railroad Law. Therefore, we have it as a starting point that as late as 1878 street surface railroads might be incorporated under the general act of 1850 and were subject for lack of commencement and completion of their roads to the self-executing forfeiture provisions incorporated into said act and now found in the General Railroad Law and invoked against petitioner.

But it is urged that after this amendment was made chapter 252, Laws of 1884, being "An act to provide for the construction, extension, maintenance and operation of street surface railroads," etc., was adopted, and that by this act for the first time a complete statutory scheme was provided for the construction, maintenance and operation of street surface railroads and that by a process of repeal or substitution or exclusion this act took exclusive jurisdiction of such roads and terminated any application to them of the Laws of 1850 and especially of the forfeiture provisions therein already referred to. Section 10 of this latter act contained provisions with reference to the forfeiture for non-action of rights, privileges and franchises acquired by a surface railroad incorporated under the act which have largely been re-enacted and reproduced in section 99 of the present Railroad Law.

While the contention of the appellant in regard to the effect of this act of 1884 when originally passed, even if correct might not be controlling in our construction of the statutes as they stood at the time it received its franchise in

question here, we have given it such consideration as leads us to the conclusion that it is not well made.

It is not claimed that the act of 1884 by express terms repealed or prevented the application of the act of 1850 to street surface railroads, and we are, therefore, thrown upon the doctrine of repeal, or exclusion by implication. The general principles are so well settled and familiar as not to require the support of extensive citations that such implied effect upon an earlier statute by a later one is not favored; that when some office or function can by fair construction be assigned to both acts and they confer different powers to be exercised for different purposes both must stand though they were designed to operate upon the same general subject; that the later act will not be deemed to repeal the former one unless the two are manifestly inconsistent and a clear intention to repeal is disclosed on the face of the later statute. (*Woods* v. *Supervisors of Madison Co.*, 136 N. Y. 403; *People* v. *Koenig*, 9 App. Div. 436.)

A later statute will not be deemed to repeal or abrogate a former one unless it covers the entire subject and was plainly intended to furnish the only law upon the subject, and to be a substitute for the former enactment. (*People ex rel. Ross* v. *City of Brooklyn*, 69 N. Y. 605; *Heckmann* v. *Pinkney*, 81 N. Y. 211.)

As we read the two statutes now under review it does not seem to us that, under the general principles above adverted to, the act of 1884 accomplished the purpose claimed by the appellant of withdrawing street surface railroads from the application of the act of 1850, and especially of the provision incorporated into said act by the amendment of 1867. Concededly there was no general repeal of the act of 1850, for its existence continued at least as applicable to steam railroads. Neither do we regard the provisions of the later act as so utterly repugnant to, and inconsistent with, various provisions of the former act, including the one especially under discussion, as to repeal their application to street surface railroads. We think that the legislature quite conclusively evidenced its

intent not to work the result now claimed for the later act when it inserted in section 1 thereof the provision that " Such corporation (street surface railroad incorporated under said act of 1884) shall also have all the powers and privileges granted, and be subject to all the liabilities imposed by this act or by the act entitled ' An act to authorize the formation of railroad corporations, and to regulate the same,' passed April 2, 1850, and the several acts amendatory thereof, except as the said acts are herein modified."   Clearly this preserved the continued application of the forfeiture provisions which have now become section 5 of the General Railroad Law, unless the same were plainly inconsistent with, and repugnant to, the provisions of section 10 of said act of 1884.   As we shall hereafter attempt to demonstrate, we think this was not the case.

Again, this court made a decision which has an important bearing upon appellant's contention as to the resulting effect of the various statutory enactments as they existed after 1884 and before 1890.

In *Matter of W. S. A. & P. R. R. Co.* (115 N. Y. 442) it was held in substance that chapter 140 of the Laws of 1850 and its amendments authorized the formation and operation of street surface railroads.   This decision was made in 1889 or several years after the passage of the act of 1884 which it is now argued assumed exclusive jurisdiction of the incorporation and operation of said railroads, and it was passing upon an application at that date being made under said act for the appointment of commissioners.   There was no suggestion that the act of 1884 had become a substitute for the act of 1850 as applied to street surface railroads, but, upon the other hand, the broad language used in the opinion quoted quite exclusively negatives any such idea.

But now we proceed further to a consideration of the statutory enactments as they had been changed, consolidated and formulated prior to the date when appellant obtained its franchise.   Therein we think will be found a refutation of the argument that so far as street surface railroads are concerned the statutory provisions originally adopted in 1884 including

the substance of what is now the non-self-executing forfeiture provisions of section 99 of the Railroad Law, have been substituted for or have repealed what were once provisions of the act of 1850 including the substance of what is now section 5 of said Railroad Law.

The Railroad Law adopted in 1890, chapter 565, covers the subject of both steam and street surface railroads. It supplants both the statutes of 1850 and 1884 as theretofore existing and embodies provisions drawn from each. Its interpretation really and finally measures appellant's rights here, and the other propositions heretofore discussed are mainly of interest as leading up to and aiding that interpretation.

Some things are undisputed. The legislature sought to combine into a single enactment, which is not always plain and harmonious in all of its details, provisions for the incorporation, operation and control of both steam and surface railroads. Articles I, II and III cover steam roads. Article IV relates solely to street surface roads. But it will not be claimed that the latter article fully and exclusively provides for the organization, operation and control of such roads, for manifestly resort must be had to various provisions in the other articles for powers and privileges essential to their organization and operation. Some provisions in those other articles are plainly not applicable to them. Apparently, therefore, the legislature, while specifically making street surface roads subject to the provisions of article IV, intended that they should also be subject to the provisions of the other articles, so far as the latter were necessary and germane, and upon a survey of the entire statute we cannot arbitrarily say that a provision like section 5 is not applicable simply because not found in article IV, but the question of its applicability must be determined by general rules governing this subject.

We think it must be held thus applicable unless either it is clearly inconsistent with, or repugnant to, later provisions to be found in the act, or unless the legislature has made clear in some other way its intention that it should not apply to street surface roads. We do not find the existence of any of

these obstacles. Leaving out of consideration for the moment the objections especially urged to the appropriateness of such section as governing *extensions* of a street surface road, we do not see any difficulty in appplying to such roads the provisions both of said section and of section 99, which is said to be inconsistent and repugnant. In fact, we think that both sections are needed to protect the public from undue delay upon the part of a corporation in commencing and completing its road. Section 99 requires the corporation to commence and complete the construction of its road within a certain period after the consent of the local authorities and property owners or the substitute for the latter have been obtained. This protection is valuable so far as it goes, but it does not cover the entire subject. It does not specify any time within which such consents must be obtained and so far as its provisions are concerned, a railroad company after filing its certificate of incorporation, or, as we shall hereafter say and for the moment assume, its certificate of extension, might delay indefinitely before proceeding to a point where it would be compelled to commence and complete its road. Section 5 supplements these provisions of the later section by requiring a corporation to proceed within a certain time fixed by the date of filing its certificate of incorporation or of extension. This requirement may or may not be as valuable and necessary as that prescribed by section 99, but it secures the public benefit that a corporation taking advantage of a statute allowing it to become incorporated for the purpose of building a railroad or to file a certificate for the purpose of extending such road, must exercise the privileges thus conferred within a certain time or else forfeit them. Furthermore, and what is especially pertinent here, we are unable to see any inconsistency or repugnancy between such requirements and those provided by section 99. Each section commands that as a return for privileges conferred upon it, a street surface railroad shall within a certain time take steps to utilize those privileges and make them a possible subject of use and benefit to the public. Neither section is hostile to the other but both supplement

each other and provide for the exercise of not unreasonable diligence by a corporation in return for privileges which are granted in part at least that it may serve public convenience and utility.

So far from finding proof of legislative intent that section 5 should not be applicable to a corporation like appellant, it seems to us that there is quite conclusive evidence of the belief upon the part of the legislature that it did apply unless specifically prevented.

Section 106 of the Railroad Law provides that "the corporate existence of and powers of every street surface railroad corporation, which has completed a railroad upon the *greater portion* of the route designated in its certificate of incorporation, within ten years from the date of filing such certificate in the office of the secretary of state, and which has operated such completed portion of its railroad continuously for a period of five (originally ten) years last past, and is now operating the same, shall continue with like force and effect, as though it had in all respects complied *with the provisions of law with reference to the time when it should have fully completed its road.*" The terms employed in this provision so plainly correspond with the provisions of section 5 and so clearly relieve against such a forfeiture as is provided for in said section, that they leave little doubt that the legislature construed section 5 as applicable to a street surface railroad. By chapter 508 of the Laws of 1901 section 5 of the Railroad Law was amended by the following provision : " This section shall not apply to any street surface railroad company incorporated prior to July 1, 1895, which has obtained or become the owner of the consents of the local authorities, of any city of the first or second class," etc.    While the passage of such amendment is not a conclusive argument upon this point, it does suggest with weight as bearing upon legislative intent, that there was no occasion for exempting certain surface railroads from the operation of said statute unless otherwise it was applicable to them.    And this act, it will be noted, was passed long after the act of 1884 and the act of 1890 whereby it is contended that the application of said section to said roads was repealed or terminated.

But upon the question of the application of this section it is strenuously urged that at most it only measures rights by reference to a certificate of incorporation; that, therefore, it can only relate to operations under such certificate of incorporation, and can have no reference to an *extension* of a railroad line which is not included in the certificate of incorporation, but is covered merely by a certificate of extension, and various absurd results are pointed out which it is said would follow from an attempt to apply it to an extension. Again, we find ourselves unable to agree with the arguments addressed to us. If, as we have decided, this section is intended, and ought, to be applied in conserving public interests to street surface railroads, then, if it can reasonably be done, we ought not to limit its enforcement to the line of road provided for in the original certificate of incorporation, but equally should apply it to extensions, which are just as proper subjects for its application as the proposed original line of road. It may be conceded at once that the language is not so appropriate to extensions as it might be, but no one can study the Railroad Law as a whole without finding other provisions which are not in all respects connected and harmonious. We believe that the provisions under review may be so construed as to apply to the subject before us without undue straining or violation of any reasonable rules of interpretation.

The certificate of extension which a corporation files is in effect, clearly and simply, an amendment of its original articles of incorporation. Those original articles prescribe the line and extent of its proposed route. The certificate of extension prescribes the line and route of an additional road and to that extent amends the original articles of incorporation. For the purposes of this provision, we think it may naturally and easily be treated as an amendment to the articles of incorporation made to include the proposed extension, and the date of filing of which will fix the periods within which a corporation must act as to said extension. The legislature itself seems to have had some such idea of amendment in mind when it provided in section 106 of the Rail-

road Law relating to street surface railroads that "every such corporation shall have the right to operate any extensions and branches of its railroad, now constructed and operated by it, which have been so constructed and operated by it, for a period of ten years last past, with like force and effect, as though the route of such extensions and branches were designated in its *certificate of incorporation.*"

In like manner the provision for the expenditure of ten per cent of the amount of capital manifestly should be construed with reference to the proposed extension, and we see no particular difficulty in doing this. If there is an increase in the capital of a corporation expressly and explicitly devoted to the purpose of constructing said extension, that would readily suggest the measure of the amount to be expended upon the extension within the time prescribed. If there is no such specific increase but rather a proposition to construct the extension out of capital already possessed by the corporation, the per cent to be expended would still be measured by the entire amount of capital to be used in the construction of such extension considered by itself. Under this interpretation the limit of time for commencing and completing the extension and of the capital thereon to be expended, would have plain and just reference to such project considered by itself, and in like manner a failure to comply with the requirements of law thus construed would result in a forfeiture of the franchise to build such extension and would not, as suggested, affect other rights of a corporation not related to or connected with it.

Finally it is urged that if section 5 did otherwise apply to appellant and its extension franchise and would otherwise have worked a forfeiture of its rights, such application and such result would have been prevented and obviated by the provisions of chapters 494 and 508 of the Laws of 1901.

The first of said statutes amends section 93 of the Railroad Law, and amongst other things provides : "Every consent by the local authorites of any city of the first class or of any city, town or village now embraced within the corporate limits of any city of the first class heretofore given to or acquired or

owned by any street surface railroad corporation, since January first, eighteen hundred and ninety, is hereby ratified and confirmed, and shall be deemed to be in full force and effect, and shall continue until and including December thirty-first, nineteen hundred and three when it may be forfeited," etc. The language of this provision properly describes appellant's franchise.

The other act is the one already referred to exempting from the provisions of section 5 street surface railroads incorporated before a certain date, of which appellant was one.

If we assume that these enactments were intended to accomplish the purpose claimed for them, we still think that they were ineffectual so to do. At the time they were passed, appellant had absolutely forfeited and lost its franchise to construct the road in Saratoga avenue, and all of its rights thereunder. (*Matter of Brooklyn, W. & N. Ry. Co.*, 72 N. Y. 245.) The municipality, upon the other hand, had regained by forfeiture all of the rights which it had once granted to the appellant. Both parties to the original franchise had been restored to precisely the same position which they occupied before it was granted. Section 18, article III of the Constitution forbade the legislature to authorize the construction or operation of appellant's street railroad through Saratoga avenue, except upon the condition that the consent of the local authorities having the control of that portion of the street or highway upon which it was proposed to construct or operate such railroad should be first obtained. We fail to see how any statute which attempted to relieve appellant from its forfeiture, and thus indirectly to grant it anew rights which at the time had become absolutely lost to it and reinvested in the municipality, without the consent of the latter, could avoid the prohibition of said constitutional provision.

In accordance with all these views, we think the order appealed from must be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WERNER and CHASE, JJ., concur; O'BRIEN, J., absent.

Order affirmed.