dicted has a constitutional right to make a motion to dismiss, notwithstanding the provisions of the Code to the contrary."

The provision of the Code referred to is section 313, which limits the cases in which the indictment must be set aside to those not found, indorsed, and presented as prescribed in sections 268 and 272; and when a person has been permitted to be present during the session of the grand jury except as provided in sections 262, 263, and 264, neither of which has any bearing here.

Every defendant charged with a crime is entitled to the presumption of innocence; and, starting with this presumption, legal evidence must be produced tending to connect the defendant with the crime. The essential probative force of the testimony against defendant narrows down to the fact that he deposited some money on the day after the false warrant was cashed. This is not inconsistent with a legitimate business transaction entirely foreign to the crime charged, and is in no way a rebuttal of the presumption of innocence.

In People v. Plath, 100 N. Y. 590, 3 N. E. 790, 53 Am. Rep. 236, the court quotes with approval from Roscoe's Criminal Evidence, 122, as follows:

"That there should be some fact deposed to, *independently altogether of the evidence of the accomplice,* which taken by itself leads to the inference not only that a crime has been committed but that the prisoner is implicated in it."

Following this rule, and taking all the evidence before the grand jury except that of Savage, the accomplice, it in no way indicates or tends to indicate that any crime has been committed, nor does it implicate that the defendant was implicated or had any part in the transaction to which the charge relates.

The indictment is dismissed.

---

(158 App. Div. 153.)

PEOPLE ex rel. BROOKLYN, Q. C. & S. R. CO. v. STEERS, President of Borough of Brooklyn.

(Supreme Court, Appellate Division, Second Department.   July 25, 1913.)

1. STREET RAILROADS (§ 28*)—RIGHT TO CONSTRUCT—STATUTORY PROVISIONS— "EXTENSION."

Under Railroad Law (Laws 1890, c. 565) § 90, as amended by Laws 1892, c. 676, providing that a street surface railroad corporation may file in each of the offices in which its certificates of incorporation are filed a statement of the names and descriptions of the streets, roads, and highways in which it is proposed to extend its road, and that upon filing such statement it shall have the same powers and privileges to extend, construct, operate, and maintain its road in such streets, roads, and highways as it acquired by its incorporation to construct and operate its road in the streets named in its certificate of incorporation, and section 5, as amended by Laws 1893, c. 433, now Consol. Laws 1910, c. 49, § 12, providing that if any domestic railroad corporation shall not, within five years after its certificate of incorporation is filed, begin the construction of its road and expend thereon 10 per cent. of the amount of its capital, its corporate existence and powers shall cease, where such a corporation filed a certificate of extension, naming eight separate and dis-

tinct streets, neither of which communicated with either of the others, and thereafter within five years constructed a road on certain of those streets and expended the necessary percentage of the capital, but failed to construct any road on another of such streets, it lost its right to construct a road on such street as the different routes specified in the certificate constituted separate extensions, an "extension" involving the idea of something pre-existing with which it is connected and which is thereby enlarged, especially in view of the amendment of section 90, by Laws 1893, c. 434, authorizing the filing of such a certificate "from time to time" and referring to the construction of branches as well as extensions.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 39–42, 44, 45, 56, 61, 63–65; Dec. Dig. § 28.*

For other definitions, see Words and Phrases, vol. 3, pp. 2615–2618; vol. 8, pp. 7658, 7659.]

2. STREET RAILROADS (§ 61*)—RIGHT TO CONSTRUCT—STATUTORY PROVISIONS.
The provision of Railroad Law (Laws 1890, c. 565) § 5, as amended by Laws 1893, c. 433, now Consol. Laws 1910, c. 49, § 12, that if any domestic corporation shall not, within five years after its certificate of incorporation is filed, begin its construction of its road and expend thereon 10 per cent. of the amount of its capital, its corporate existence and powers shall cease, applies to street surface railroad companies and is self-executing.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 50–54; Dec. Dig. § 61.*]

Appeal from Special Term, Kings County.

Mandamus by the People, on relation of Brooklyn, Queens County & Suburban Railroad Company, against Alfred E. Steers, President of the Borough of Brooklyn. From an order (80 Misc. Rep. 324, 140 N. Y. Supp. 945) granting a peremptory writ, the defendant appeals. Reversed, and motion for writ denied.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

William P. Burr, of New York City (William J. Clarke, of New York City, on the brief), for appellant.

Charles L. Woody, of Brooklyn, for respondent.

BURR, J. [1] Relator is a domestic street railroad corporation, and is the successor in interest of the Broadway Railroad Company, a similar corporation. Prior to December 31, 1892, the latter company had constructed its road to points on Atlantic avenue in the then city, now borough, of Brooklyn, substantially coterminous with the southerly portion of Troy avenue, Utica avenue, and Ralph avenue, respectively, lying between Atlantic avenue and the boundary line of said city. It seems to be conceded that the original franchise permitted such construction to the points named, or to a short distance southerly therefrom. On December 31, 1892, it caused to be filed and recorded in the appropriate offices a certificate of extension, pursuant to the provisions of the then existing Railroad Law (Laws of 1890, c. 565, § 90, as amended Laws of 1892, c. 676). The act as amended provided that:

"A street surface railroad corporation may file in each of the offices in which its certificates of incorporation are filed, a statement of the names and

descriptions of the streets, roads and highways in which it is proposed to extend its road. Upon filing such statement such corporation shall, except as otherwise prescribed by law, have the same power and privileges, to extend, construct, operate and maintain its road in such streets, roads and highways as it acquired by its incorporation to construct, operate and maintain its road in the streets, roads and highways named in its certificate of incorporation."

In said certificate eight separate and distinct streets were named, none of which communicated with any of the others. The certificate contained eight paragraphs, in each of which the extension therein described was denominated a "route." The sixth, seventh, and eighth paragraphs thereof were as follows:

"6. A route commencing at the end of the track of said company on Ralph avenue between Atlantic avenue and Pacific street, thence through Ralph avenue to the city line.

"7. A route commencing at the end of the track of said company in Utica avenue at Atlantic avenue, thence along Utica avenue to the city line.

"8. A route commencing at the track of said railroad company at the intersection of Bergen street and Troy avenue, thence along Troy avenue to city line."

On July 17, 1893, the Broadway Railroad Company obtained from the local authorities of the city of Brooklyn its consent to the construction and operation of the street surface railroad over, among other streets named therein, "Troy avenue, from Fulton street to St. Marks avenue." Over a part of this route, namely, from Fulton street to Atlantic avenue, this road had been already constructed; but by the same consent permission was given to change the motive power "from horse to the overhead electric trolley system of propulsion." On July 24, 1893, a further consent was obtained by said railroad company from the local authorities to the construction and operation, either by horse power or electricity, of a railroad over 34 streets named therein, among which were "Ralph avenue, from Pacific street to the city line. Utica avenue, from Atlantic avenue to the city line," and "Troy avenue, from St. Marks avenue to the city line." Within five years thereafter railroads were constructed along the routes designated in the certificate of extension as routes numbered 6 and 7, and referred to in the consent of the local authorities as the Ralph avenue and Utica avenue routes. Up to this time there has been no construction upon any part of the Troy avenue route designated as number 8 in said certificate.

Relator, being now desirous of building a railroad through said avenue, applied to the president of the borough of Brooklyn for the necessary permit to open the street for that purpose. Upon his refusal this proceeding was instituted to obtain a peremptory writ of mandamus, and from an order granting its application defendant appeals.

[2] By section 5 of the Railroad Law of 1890, as amended (Laws of 1893, c. 433, now section 12 of Consolidated Laws, c. 49 [Laws of 1910, c. 481]), it is provided that:

"If any domestic railroad corporation shall not, within five years after its certificate of incorporation is filed, begin the construction of its road and expend thereon ten per centum of the amount of its capital, * * * its corporate existence and powers shall cease."

This statute is applicable to street surface railroad companies, and is self-executing. In re Brooklyn, Queens County & Suburban R. R. Co., 185 N. Y. 183, 77 N. E. 994. Upon the Ralph avenue route and the Utica avenue route, within the prescribed period relator has expended a sum equal to 10 per cent. of the capital necessary to construct a railroad upon all of the eight routes named in the certificate, and the total mileage of track thus laid exceeds 10 per cent. of the entire trackage upon all of said additional routes. The learned court at Special Term fairly stated the controversy in these words:

"The relator claims that all eight routes named in the certificate of extension filed December 31, 1892, constitute one extension. The city authorities, on the other hand, contend that the one certificate of extension enumerating eight routes contains in law and fact eight separate extensions."

We think that the latter construction is correct. An "extension" involves the idea of something pre-existing, with which it is connected, and which is thereby enlarged. In Bohmer v. Haffen, 35 App. Div. 381, 388, 54 N. Y. Supp. 1030, 1035, affirmed 161 N. Y. 390, 55 N. E. 1049, Presiding Justice Van Brunt said:

"In considering the provisions of chapter 676 of the Laws of 1892, in relation to extensions by street surface railroad corporations, it would seem that the word 'extend' was not intended to be used in its restricted sense of prolongation in a given direction, but rather that it was intended to enable the railroad company to acquire a right of construction, maintenance, and operation of additional *routes* which might be operated in connection with its existing lines."

But each extension, which is unrelated to any other extension except through the thing which they enlarge, would naturally be spoken of as a separate extension, just as the certificate in question described them as separate and additional routes. The branch must of necessity be joined to the vine and be a part thereof, but as between themselves each branch has a separate and distinct entity. In Matter of Brooklyn, Queens County & Suburban R. Co., supra, the court said (185 N. Y. page 183, 77 N. E. page 998):

"The certificate of extension which a corporation files is in effect, clearly and simply, an amendment of its original articles of incorporation. Those original articles prescribe the line and extent of its proposed route. The certificate of extension prescribes the line and route of an additional road and to that extend amends the original articles of incorporation. For the purposes of this provision, we think it may naturally and easily be treated as an amendment to the articles of incorporation made to include the proposed extension, and the date of filing of which will fix the periods within which a corporation must act as to said extension."

This language must, of course, be construed in the light of the facts then under consideration. In that case but a single extension, that along Saratoga avenue, was involved, and the court had before it the question whether the provisions of this statute were applicable to street surface railroads, were self-executing, or otherwise, and the meaning of the words "ten per cent." of the amount of its capital. The learned court at Special Term, however, making use of this language as a basis for its argument, says:

"It can hardly be contended that if all the streets named in the various routes in the certificate of extension of December 31, 1892, had originally

been named in the articles of incorporation of the company, and over 10 per cent. of the total cost of the first projected railroad had been made in actual construction, there could have been a forfeiture."

If the argument proves anything, it proves too much. If the original articles of incorporation are to be deemed amended in this broad sense, and were these new roads automatically to become part of the original system, then, if the company had expended upon its original route 10 per cent. of the amount necessary to construct both its original and extended road, no actual construction would ever become necessary on the parts added by extension to prevent forfeiture for violation of the statutory requirement above referred to. Again, although more than 10 per cent. had been expended upon the construction of the original route, if when the certificate of extension was filed less than 10 per cent. of the cost of the original route plus the extension had been expended, instantly forfeiture would follow. The question actually decided in Matter of Brooklyn, Queens County & Suburban Railroad Co., supra, that the 10 per cent. provision referred to the cost of the extension only, clearly indicates that the language of the opinion cannot be enlarged to the extent claimed. We think that the manifest purpose of the statutory requirement that within five years actual construction should begin, and 10 per cent. of the capital be then expended, was to prevent a railroad company from obtaining a franchise from the state for the operation of a railroad through a large number of designated streets, and then indefinitely postponing actual construction of track through any portion thereof. The subsequent history of the legislation confirms this view. The statute relating to extension as originally passed (Laws of 1892, c. 676) in express terms authorized only the filing of one certificate of extension. In the succeeding year (Laws of 1893, c. 434) a continuing power was given to file such certificate "from time to time," and in express terms such certificate was made to refer to the construction of "branches" as well as extensions. The section was further amended (Laws of 1895, c. 933) in particulars not here important, and is now found in section 170 of the present Railroad Law (Consolidated Laws, c. 49, supra) in these words:

"Any street surface railroad corporation, at any time proposing to extend its road or to construct branches thereof, may, from time to time, make and file in each of the offices in which its certificate of incorporation is filed, a statement of the names and description of the streets, roads, avenues, highways and private property in or upon which it is proposed to construct, maintain or operate such extensions or branches."

There would seem to have been no necessity for the amendment of 1893, perpetuated in the present Railroad Law, if at one time a railroad company could file a certificate of extension, relating not only to its present needs, but to every street or avenue that by any excess of imagination it might conclude would be useful in the future. We think, therefore, that when there is included in a certificate of extension several separate and distinct routes, unrelated to each other, each route must, for the purpose of the statute under consideration, be deemed a separate extension. If, availing itself of the provisions of the amended statute, relator had "from time to time," and on eight

successive days, filed eight separate certificates, designating in each a single route, we think that it would not be contended that these eight certificates were to be read together as constituting a single extension. The fact that eight unrelated routes, separately described, were included in a single instrument, cannot make any difference as to the construction or meaning thereof.

The order should be reversed, with $10 costs and disbursements, and the motion for a peremptory writ of mandamus should be denied, with $50 costs. All concur.