SMITH v. CITY OF BUFFALO et al.

KUHN v. KNIGHT, Mayor, et al.

(Supreme Court, Special Term, Erie County.   May, 1906.)

1. INJUNCTION—RESTRAINING OFFICIAL ACTION.
    An injunction should not issue to prevent the mayor of a city from approving a franchise alleged to have been granted by the common council without complying with certain preliminary formalities required by law; the mayor having power to either approve or veto the franchise, and there being no showing that he intended to approve it, aside from a mere general allegation that he threatened to do so.
2. STREET RAILROADS—RIGHT TO OCCUPY PARK APPROACH—APPLICATION FOR CONSENT—NOTICE OF HEARING.
    Railroad Act, Laws 1890, p. 1109, c. 565, § 92, provides that, before the local authorities act upon an application for consent to construct a street railroad, they shall give notice of the time and place where the application will be considered, etc.   Section 91 provides that, if the exclusive control of any street or avenue to be occupied by any street railroad is vested in any other authority than the common council, the consent of such other authority shall be obtained.   Buffalo City Charter (section 310) gives the park board of that city exclusive power over the construction and maintenance of park roads and approaches, and authorizes the board to grant to street railroad companies the privilege of laying railways in park approaches.   Held that, before acting upon an application for the use of a park approach for a street railroad track, the park board should give the notice provided by section 92 of the railroad act.
3. INJUNCTION—MUNICIPAL AUTHORITIES—CONSENT TO OCCUPY STREETS—STREET RAILROADS—NOTICE OF APPLICATION—FAILURE TO GIVE.
    Under the taxpayers' act, the court can exercise its restraining power to prevent the park board of a city from giving consent to the laying of street railroad tracks in a park approach where the preliminary step required by the statute has not been taken.

Action by William F. Smith against the city of Buffalo and others, and by Charles Kuhn against Erastus C. Knight, as mayor of the city of Buffalo, and others.   Heard on motions to dissolve preliminary injunctions.   Injunctions restraining the defendant park board from taking certain proceedings modified and continued, and in all other respects vacated.

Lewis Stockton, Frank C. Ferguson, and William B. Wright, Jr., for plaintiffs.

Porter Norton, for the International Railway Company.

Louis E. Desbecker, Corp. Counsel of the City of Buffalo, for the park board.

MARCUS, J.   These actions are brought by two taxpayers of the city of Buffalo to obtain judgments declaring illegal a proposed grant or franchise to the International Railway Company to construct a

double track street railroad in Fillmore avenue and in other streets, a portion of which constitute park approaches, and to restrain the mayor and the park commissioners of the city from making, signing, approving, or authorizing, or in any way executing, such proposed grant or franchise. A preliminary injunction was granted in each of the above actions after the common council had passed the proposed franchise, and before the mayor or park board had acted thereon, restraining the mayor and the members of the park board from taking further action thereon. The preliminary injunction granted in the Smith Case required the defendants to show cause at a Special Term of the court why said preliminary injunction should not be continued during the pendency of this action. The preliminary injunction in the Kuhn Case contained no return order to show cause.

Upon the hearing of this motion, I came to the conclusion that the preliminary injunction should be dissolved as against the mayor of the city in any event, and an order was made dissolving the same in both actions as against the mayor. As the mayor is given the power to approve or veto all acts of the common council, it seemed to me that the exercise of this executive function should not be anticipated nor interfered with. Moreover, the court should not assume, from a general statement in the complaint to the effect that the mayor threatens to approve the action of the common council, without giving reasons for such surmise, that he would approve it, especially if it was illegal. Even if the mayor should approve such action, when it was illegal in the steps preceding its adoption by the council, his approval would not give it validity, and both of these taxpayers' actions can still proceed to final judgment, and the franchises can be declared illegal and void. Should the railroad company in the meantime assume to act under its franchise, if it is void, it would do so at its peril, and could readily be evicted from possession of all streets that it may occupy. Further, the action of the common council has properly been described as embryonic until approved by the mayor, and courts should await the action of the mayor thereon before interfering with its enforcement. Dailey v. City of New Haven, 60 Conn. 314, 22 Atl. 945, 14 L. R. A. 69; New Orleans Ry. Co. v. Mayor et al., 39 La. Ann. 127, 1 South. 434.

The motions for dissolution of the injunctions in so far as they restrained the park board were adjourned for further hearing and consideration, as presenting a somewhat different question, in view of the fact that the action of the park board is final without approval by the mayor or any other executive officer.

The principal point of alleged illegality as against the park board lies in the fact that that board failed to give public notice of the application of the railway company for a franchise, and of the time and place when it would be first considered, and failed to publish the same in any newspaper whatsoever, as required by section 92 of the railroad act (Laws 1890, p. 1109, c. 565), and that said board is about to give its consent to the construction of the railway in question without public notice. Section 92 of the railroad act provides that, before the local authorities shall act upon an application for their consent

to construct a street railroad, they shall give public notice thereof, and of the time and place when it will first be considered, by publishing such notice for at least 14 days in two daily newspapers. Under various provisions of the railroad law of the state and of the charter of the city of Buffalo, it is perhaps a debatable question whether the park board is required to give such public notice, and whether such provision, requiring notice, does not relate solely to the common council, which did give proper notice of the application pending before it for this franchise. It seems to me the interest of all parties concerned will be best subserved by so modifying the injunction as to have this notice given, so that this question affecting the validity of the grant may be eliminated. The delay thereby involved of 14 days cannot seriously embarrass any of the parties to the action. I have come to this conclusion from a brief consideration of the law applicable to the present situation. Section 91 of the railroad law provides that, if in any city the exclusive control of any street or avenue which is to be used or occupied by any street railroad, extension, or branch is vested in any other authority than the common council, the consent of such other authority shall also be first obtained. Under section 310 of the charter of the city of Buffalo, the park board has sole and exclusive power over the construction and maintenance of park roads and park approaches, and under section 314 of the charter the park board has power, upon certain stated terms, to grant to any street railroad company the privilege of laying down and operating a railway in park approaches. It is claimed by the railway company and park board that, under sections 91 and 92 of the railroad law, the local authorities referred to, who are required to give and publish public notice of the time when they will consider such an application, are only the common council of the city of Buffalo, while the plaintiff claims that such requirement must also relate to the park board. It seems to me that there is much force in the plaintiff's contention, for, if the notice so given by the common council should be deemed sufficient, it would amount to holding that the common council had some jurisdiction over the park avenues and approaches, which is clearly denied to the council by the charter. If the park board has such exclusive control, and its consent is necessary to the laying of tracks in its streets and approaches, it would seem reasonable that it should publish the notice required before giving its consent, in view of section 91 of the railroad law, already quoted, providing that, where the exclusive control of such street is vested in another authority than the common council, the consent of such other authority must also be obtained. The publication of such a notice, if required, is clearly an administrative, and, probably, a jurisdictional, act, and a condition precedent to the granting of the park board's consent. I therefore think that, under the taxpayers' act, the court can exercise its restraining power to prevent the giving of the consent by the park board, where a statutory preliminary step has not been taken, or that, at least, the court has power, in its discretion, to grant a preliminary injunction under such circumstances. As a practical proposition, it would also seem reasonable to conclude that neither the city, nor the citizens of Buffalo, nor the rail-

way company should wish to take chances on the validity of so important a grant, where the objection can be avoided with so little trouble and delay.

I have therefore concluded that the injunctions against the park board in both actions should be so modified as to restrain the park board from taking any action, or any further action, towards granting its consent to the International Railway Company to construct this railway in the streets, avenues, or approaches of the park, until after it shall have published public notice thereof, and of the time and place when the application of said railway company will first be considered by said park board; such action to be published daily, for at least 14 days in two of the daily newspapers of Buffalo, and that said injunctions be in all other respects vacated.