(51 Misc. Rep. 244.)

### SMITH v. CITY OF BUFFALO et al.

(Supreme Court, Special Term, Erie County. June, 1906.)

1. STATUTES—TITLE OF ACT.

   Act March 18, 1892 (Laws 1892, p. 311, c. 151), entitled "An act to ratify a certain contract entered into by and between the city of Buffalo, and the Buffalo Railway Company, the Crosstown Street Railway Company of Buffalo and the West Side Street Railway Company, and to carry the same into full force and effect," does not violate Const. art. 3, § 16, providing that no private or local act shall embrace more than one subject, which shall be expressed in its title.

   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 124, 136, 139.]

2. STREET RAILROADS—EXTENSION—SALE OF FRANCHISE.

   Three street railways entered into a contract with the city of Buffalo, which was ratified by Act March 18, 1892 (Laws 1892, p. 311, c. 151). The contract provided that the parties might extend its operation to any extension of their railroads. The successor of two of the companies which were parties to the agreement asked leave to construct a railway along certain streets of the city, and the common council consented thereto. Before the mayor had given his consent, the railroad company filed a statement that it intended to extend its railroad by constructing a branch or extension thereof, and accepted the consent of the common council to the original application. The third railroad company which was a party to the agreement also consented. The board of park commissioners thereafter consented to the construction of so much of the projected road as was within the streets within the control of such board, which consent the applicant duly accepted. In all the proceedings all the parties referred to the projected railroad as a street railroad, and not as an extension of an existing road, except in the first recital in the application. *Held*, that the projected road was an extension within the terms of the agreement, and not within the railroad law, requiring that a franchise be sold at public auction.

   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, §§ 35, 36.]

3. STATUTES—LOCAL AND SPECIAL ACT.

   The right given a street railway company to extend its lines under an agreement between a city and the railroad company, which agreement was ratified by Act March 18, 1892 (Laws 1892, p. 311, c. 151), is not in violation of Const. art. 3, § 18, providing that no private or local act shall be passed granting to any corporation or individual the right to lay down railroad tracks, though the right to construct such extension rests on such act.

   [Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, § 85.]

Action by William F. Smith against the city of Buffalo and others to have a franchise to construct a street surface railway in the city declared illegal. Complaint dismissed. See 99 N. Y. Supp. 986.

Frank C. Ferguson and Lewis Stockton, for plaintiff.

Louis E. Desbecker and Samuel F. Moran, for the city of Buffalo.

Porter Norton, Charles B. Sears, and Simon Fleischmann, for the International Railway Company.

WHITE, J.  On January 1, 1892, there existed the Buffalo Railway Company, the Crosstown Street Railway Company of Buffalo, and the West Side Street Railway Company, independent street railroad corporations, all engaged and interested in the maintenance and operation of street surface railroads in the city of Buffalo.  On that day the city of Buffalo and said three street railroad companies made and entered into a contract known as the "Milburn Agreement," in and by which the terms and conditions of certain franchises theretofore granted by the city to said railroad corporations were changed and modified to the benefit and advantage of all the parties thereto, and in and by which the said railroads agreed to abolish all transfer charges, as the same had theretofore been made, and that thereafter they would charge but a single fare for a continuous trip over any or all of their lines of railroad, and that there should be a uniform fare of five cents for a continuous trip over any portion of the entire railroad system owned by the three companies.  In consideration of the abolition of such transfer charges, the city of Buffalo agreed to relieve and release the railroad companies from their obligation to pay to it any portion of their gross receipts, pursuant to section 95, c. 565, p. 1111, of the Laws of 1890, which was 3 per cent. for the first five years and 5 per cent. thereof thereafter.  The city also released the said Crosstown Street Railway Company of Buffalo from its obligation to pay to said city 11¾ per cent. of its gross receipts, which it was then obligated to pay by the terms of its grant or franchise from the city of Buffalo.  The said city also released the said West Side Street Railway Company from its obligation to pay to it 36 per cent. of its gross receipts, which it was obligated to pay by the terms of one of its franchises from the said city, and also from its obligation to pay to the city one-sixteenth of 1 per cent., which it was obligated to pay by the terms of another of its franchises from the said city.  Said releases, however, were given and to become effectual on condition that there should be paid to the said city thereafter 2 per cent. of the gross receipts of said three companies when such receipts should be less than $1,500,000; 2½ per cent. when such receipts are under $2,000,000 and over $1,500,000, and 3 per cent. when such receipts should be $2,000,000 and over.  The operation of said contract was, in terms, confined to the railroads then owned by said street railroad companies, and then built or authorized to be built, except that the parties thereto might thereafter extend its operation, terms, and provisions to any extensions of their said railroads by mutual consent, to be expressed in the form of a resolution of the common council of the said city, approved by its mayor, as to any particular extension, and a written consent of the companies.

It is conceded that the Milburn agreement had and could have no legality, force, or effect unless and until it should be ratified and confirmed by the Legislature. On March 18, 1892, the Legislature passed an act (Laws 1892, p. 311, c. 151) the title of which was and is as follows:

"An act to ratify a certain contract entered into by and between the city of Buffalo, and the Buffalo Railway Company, the Crosstown Street Railway Company, of Buffalo and the West Side Street Railway Company, and to carry the same into full force and effect."

The defendant International Railway Company is a domestic street surface railroad corporation. Prior to the 20th day of February, 1902, the West Side Street Railway Company was merged into said Buffalo Railway Company, which latter company was, on or about February 20, 1902, merged into the said International Railway Company, one of the defendants herein. Said International Railway Company is the successor and assignee of the Buffalo Railway Company and the West Side Street Railway Company, two of the parties to the Milburn agreement. Said International Railway Company, as such successor and assignee of said Buffalo Railway Company and said West Side Street Railway Company, is entitled to possess and enjoy, all and singular, the rights, franchises, privileges, and immunities which were possessed by said Buffalo Railway Company and said West Side Street Railway Company at the time of such merger. At the time of the application by the International Railway Company for the franchise attacked in this suit, Buffalo was, and for a long time prior thereto had been, a city of the first class, and the railroad law at that time provided, in substance, that in cities of the first class the consent of the local authorities to the construction of a street surface railroad in a public street must contain the condition that the franchise be sold at public auction to the bidder who will agree to give to the city the largest percentage per annum of the gross receipts of such corporation, with a bond or undertaking, in such form and amount and with such conditions and sureties as may be required and approved by the comptroller or other chief fiscal officer of the city, for the fulfillment of such agreement, and for the commencement and completion of its railroad within the time designated by law, and for the performance of such additional conditions as the local authorities in their discretion may prescribe. The said law further provides that nothing therein contained shall be construed as modifying or affecting the terms of a certain contract bearing date January 1, 1892, entered into by and between the city of Buffalo and the street surface railroad corporations named in such contract, except that the provisions of said law which continue and confirm the consents of local authorities shall apply to street surface railroads in the city of Buffalo, as well as other cities of the first class; which seems to make it plain that the Legislature intended that the law should embrace the city of Buffalo as a city of the first class, and intended to make its provisions applicable thereto, and at the same time to protect the International Railway Company, as the successor of the then roads that were parties to the Milburn agreement, in the

continued enjoyment of any rights, if any, conferred upon them and it thereby.

At the time the Milburn agreement was made, Buffalo was subject to those provisions of the railroad law which require a street surface railroad franchise to be sold at public auction by virtue of the provisions of the general railroad law as enacted in 1890. By virtue of an amendment made in 1892, subsequent to the making of that agreement, Buffalo was relieved from the operation of that law as to sales of such franchises at auction, and again made subject to them by chapter 494, p. 1229, of the Laws of 1901, and has so remained to this time. On or about November 15, 1905, the defendant International Railway Company made an application to the common council of the city of Buffalo for its consent and permission to allow it, the said International Railway Company, its successors, lessees, and assigns, to construct, maintain, and operate a street surface railroad in and along Fillmore avenue and other public streets of the city of Buffalo. The consent of the said common council in the form requested by the applicant was given and approved by the then mayor on December 29, 1905. On the last-mentioned day, and prior to the said approval of said mayor, the said International Railway Company had made and filed, in each of the offices in which its certificate of incorporation was then filed, a statement, in substance, that it then proposed to extend its railroad, as the same then existed, by constructing a branch or extension thereof, which should be the same and cover the same route as that called a street surface railroad, as distinguished from a branch or an extension of the railroads then in existence. On January 3, 1906, the said International Railway Company filed with the city clerk of the city of Buffalo its acceptance of the aforesaid consent granted by the common council of the city of Buffalo, and on January 20, 1906, the Crosstown Street Railway Company of Buffalo filed in said clerk's office its consent to said grant. In all of such proceedings the Milburn agreement was referred to and treated as valid and of binding force and effect. On or about the 17th day of January, 1906, the said defendant, the Board of Park Commissioners, consented that the said International Railway Company might construct, maintain, and operate that part of its said Fillmore avenue line which was under the control of said board, to be operated by the overhead trolley system, "in connection with a railroad to be constructed by it in Fillmore avenue, north of Humboldt parkway"; and in due time thereafter the said International Railway Company filed with said park commissioners its acceptance of such consent. In these proceedings by and between the applicant and the board of park commissioners, both parties always referred to the Fillmore avenue line as a street railroad, and not as an extension or branch of an existing railroad, except in the first recital in the application, where that part of it crossing park lands is called a "branch" or "extension."

There are several interesting questions of law involved in this case, which have been thoroughly argued by counsel, besides those which seem to me to be controlling, and which, for that reason, will not be passed upon or further discussed at this time.

The plaintiff contends that the proposed Fillmore avenue line is not in fact a "branch" nor an "extension" of the railroad system of the International Railway Company, but that it is in fact an independent street surface railroad, as distinguished from a branch or extension of one. The argument advanced in support of that contention is, in substance and briefly stated, that in the proceedings to acquire the franchise the applicant and the local authorities of the city of Buffalo have uniformly called it a railroad, and have never in an official way designated it a branch or extension of an existing road; that its ultimate purpose is to connect two independent lines owned by an independent corporation, namely, the Crosstown Street Railway Company of Buffalo, six miles distant from each other, though, incidentally, the Fillmore avenue line does intersect and cross lines owned and operated by the International Railway Company on its route across the city from Main street to Abbott road; that the lines of the Crosstown Street Railway Company of Buffalo are not so situate that it could connect its said two lines by laying lines of railroad along the streets and places in which the International Railway Company proposes to lay such lines of railroad in order to make the connection which it now seeks to make; that the case of Bohmer v. Haffen, 35 App. Div. 381, 54 N. Y. Supp. 1030, is not applicable, because in that case it was held only that a railroad corporation may make an extension under a special franchise held by it as to its own lines, and not that it could make such extension as to lines which it does not own but operates. In the case at bar the facts show that the lines on Main street and on Abbott road, in the city of Buffalo, are owned by the Crosstown Street Railway Company of Buffalo, and are not owned by the defendant International Railway Company; that the Bohmer Case does not apply, for the further reason that, as the International Railway Company has applied for an "extension," its rights are limited by its own initiatory act; that the Fillmore avenue line, being a street surface railroad as distinguished from an extension of an existing road, is not within the provisions of the Milburn agreement, assuming said agreement to be valid; that the proposed franchise, being to lay down tracks of a street surface railroad, is a violation of section 18 of article 3 of the state Constitution, which provides that no private or local act shall be passed granting to any corporation, association, or individual the right to lay down railroad tracks; it being conceded that the right of the International Railway Company to construct the Fillmore avenue line in the manner proposed rests primarily on the act of March 18, 1892, hereinbefore mentioned; that the act of March 18, 1892, is unconstitutional and void, because it violates section 16 of article 3 of the state Constitution, which provides that no private or local bill which may be passed by the Legislature shall embrace more than one subject, and that shall be expressed in the title; that, it being conceded that said act is private and local, its validity must be determined by a mere inspection and examination of its title, which has hereinbefore been given in full; that the text of the act embraces two subjects, within the meaning of the Constitution, but that no subject at all is expressed in its title;

that the subjects embraced in the act in question can be determined only by reading the text, and are not, nor is either subject, discoverable from the title; that the meaning of the word "subject," as contained in the Constitution (section 16, art. 3), so far as this case is concerned, is the matters or things contained in and covered by the Milburn agreement, and is precisely as it would appear to be, and would be in fact, if the operative part of the Milburn agreement were embraced bodily in the act. Such, I repeat, is the line of argument made in behalf of the plaintiff, and, if sound, would necessitate the conclusion that the franchise in question should have been sold at public auction, in the manner prescribed by the general railroad law.

If the legal propositions thus advanced in behalf of the plaintiff were original in this suit, I would agree with him in his contention concerning them; but they have all been recently determined adversely to those contentions by this court in the case of Kuhn v. Knight, 51 Misc. Rep. 216, 99 N. Y. Supp. 986, as I understand it. The doctrine of stare decisis is undoubtedly applicable, and I am thereby constrained to follow the decision in the Kuhn Case. It follows, therefore, that the complaint should be dismissed, but without costs to any of the defendants as against the plaintiff or as against any other defendant.

Complaint dismissed, without costs.